IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| A. BROOKE CHRISTIAN, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) ) Case No. _____ |
| TRANSPERFECT GLOBAL, INC.; TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.; PHILIP R. SHAWE; and ELIZABETH ELTING, | ) ) ) ) ) ) |
| *Defendants*. | ) ) |

## COMPLAINT

Plaintiff A. Brooke Christian ("Mr. Christian" or "Plaintiff"), by and through undersigned counsel, hereby alleges for his Complaint as follows:

## NATURE OF THE CASE

1. This case arises out of promises by Defendants to provide Plaintiff with a ten percent (10%) equity stake in Defendant TransPerfect Global, Inc. ("TGI"). Those promises by Defendants – made at a meeting in Manhattan in or about January 2014 – were intended to, and did in fact, induce Plaintiff to continue working for TransPerfect Translations International, Inc. ("TTI") as its Executive Vice President of Global Sales & Marketing and Chief Sales Officer.

2. Defendants have breached their promises to Plaintiff to give him a ten percent (10%) equity stake in TGI. Having induced Plaintiff to continue working for TTI and to continue growing the company's revenue without giving him the ten percent equity stake in TGI they promised, Defendants stand to obtain a wrongful and inequitable windfall now that TGI is up for sale.

3. Plaintiff brings this action for breach of contract, promissory estoppel, and unjust enrichment. As detailed below, Mr. Christian seeks compensatory damages and equitable relief.

## JURISDICTION AND VENUE

4. This Court has general jurisdiction over this matter and personal jurisdiction over Defendants TGI and TTI because, among other reasons, both defendants are headquartered in Manhattan.

5. This Court has general jurisdiction over this matter and personal jurisdiction over Elting and Shawe because both are residents of Manhattan.

6. This Court has specific jurisdiction over this matter and personal jurisdiction over all the defendants because acts or omissions giving rise to this action occurred in Manhattan. *Inter alia*, the promise central to this case was made in Manhattan.

7. Venue is proper in this District because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Manhattan, and both TTI and TGI are headquartered in Manhattan.

8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because the parties are citizens of different states.

## PARTIES

9. Plaintiff resides in Bethesda, Maryland.

10. Defendant TransPerfect Global, Inc. is a Delaware corporation with its principal place of business at 3 Park Avenue, New York, New York.

11. Defendant TransPerfect Translations International, Inc. is a Delaware corporation with its principal place of business at 3 Park Avenue, New York, New York.

12. TGI wholly owns TTI, which is TGI's main operating company.

13. Upon information and belief, Defendant Philip R. Shawe's principal residence is in Manhattan.

14. Upon information and belief, Defendant Elizabeth Elting's principal residence is in Manhattan.

15. Defendants Elting and Shawe are the co-founders and co-Chief Executive Officers of TGI and the sole members of its board of directors. They also have served as co-CEOs and the only two directors of TTI.

## FACTUAL BACKGROUND

16. Mr. Christian was employed at TTI for twenty years. As TTI's Executive Vice President of Sales & Marketing and Chief Sales Officer, Mr. Christian was principally responsible for the dramatic growth that has occurred in TTI's sales since he joined the company. Specifically, Mr. Christian oversaw, and is principally responsible for, the company's growth from $4 million in annual revenue to over $550 million and from four company offices to 90 global cities spanning six continents. Mr. Christian also managed TTI's Washington, D.C. office, the company's second-largest worldwide.

17. Given Mr. Christian's role as a highly-valued and critical senior employee, Defendants sought to keep Mr. Christian at TTI, despite the fact that Mr. Christian had no written employment agreement at TTI and no restrictions against competing against TTI should he leave the company.

18.     In January 2014, at a meeting of the very senior leadership of TTI and its parent company, TGI, Defendants Elting and Shawe promised Mr. Christian that he would receive a ten percent (10%) equity stake in TGI. Defendants Elting and Shawe assured Mr. Christian that he would receive that promised equity stake in the relatively near future – within a matter of months.

19.     Defendants Elting and Shawe also made clear during the January 2014 meeting that there would be no sale or other significant transaction involving the ownership of TGI/TTI (including an initial public offering) unless and until Mr. Christian received the ten percent equity stake promised to him, and indicated that documents memorializing the transfer of the ten percent equity stake would be drafted in the coming months.

20.     Defendant Shawe has admitted that he and Defendant Elting agreed that TGI would provide Mr. Christian a ten percent equity stake in TGI.

20.     Between January 2014 and October 2016, Mr. Christian was employed at TTI as its Executive Vice President of Sales & Marketing and Chief Sales Officer. During that time, Mr. Christian continued to grow the company's revenue, as he had since he joined the company almost twenty years ago. Despite Defendants' promise, Mr. Christian has yet to receive the ten percent equity stake in TGI promised to him.

22.     As a result of the acrimonious litigation between Defendants Elting and Shawe over the control of TGI, the Delaware Court of Chancery ordered the appointment of a receiver to oversee the sale of TGI – a ruling affirmed on February 13, 2017 by the Delaware Supreme Court. Upon and information and belief, the court-appointed receiver is either actively attempting to sell TGI and/or its wholly-owned subsidiary TTI, or soon will be.

## COUNT I – BREACH OF CONTRACT
## (By All Defendants)

23. Plaintiff restates and reincorporates by reference the allegations of Paragraphs 1 through 22 above as if fully set forth herein.

24. At a meeting in Manhattan in or about January 2014, Defendants Elting and Shawe, on behalf of Defendants TGI and TTI, promised Plaintiff that he would receive a ten percent equity stake in TGI in exchange for his continued employment at TTI, and that in the coming months documentation would be prepared by the company memorializing Plaintiff's receipt of that ten percent equity stake. Defendants Elting and Shawe, on behalf of Defendants TGI and TTI, further promised Plaintiff that in no event would a sale or other significant transaction involving the ownership of TGI/TTI (including an initial public offering) occur unless and until Plaintiff received the ten percent equity stake promised to him. Collectively, those promises by TGI and TTI (made on behalf of those entities by Defendants Elting and Shawe) and Plaintiff's consideration in exchange for those promises – namely, his continued employment at TTI as its Executive Vice President of Sales & Marketing and Chief Sales Officer – formed a binding express contract between Plaintiff, on the one hand, and TTI and TGI on the other hand (hereafter, the "Contract").

25. Plaintiff has performed under the Contract by continuing his employment at TTI as its Executive Vice President of Sales & Marketing and Chief Sales Officer since January 2014.

26. Defendants TTI and TGI have breached the Contract by failing to provide Plaintiff the ten percent equity stake in TGI promised to him in January 2014, as described above. That breach of the Contract by Defendants TTI and TGI has directly and proximately

caused harm to Plaintiff by depriving him of the value of the ten percent equity stake in TGI promised to him.

27.     Plaintiff has suffered, and will continue to suffer, compensatory harm and damages during the pendency of this action, in an amount to be proved at trial.

### COUNT II – PROMISSORY ESTOPPEL
### (Against Defendants TTI and TGI)

28.     Plaintiff restates and reincorporates by reference the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

29.     At a meeting in New York City in or about January 2014, Defendants Elting and Shawe – on behalf of Defendants TGI and TTI – promised Plaintiff that he would receive a ten percent equity stake in TGI in exchange for his continued employment at TTI, and that in the coming months, documentation would be prepared by the company memorializing Plaintiff's receipt of that ten percent equity stake.  Defendants Elting and Shawe, on behalf of Defendants TGI and TTI, further promised Plaintiff that in no event would a sale or other significant transaction involving the ownership of TGI/TTI (including an initial public offering) occur unless and until Plaintiff received the ten percent equity stake promised to him.

30.     In making each of the promises and/or offers to Plaintiff set forth in Paragraph 29 above, Defendants each had a reasonable expectation that each of those promises and/or offers to Plaintiff would induce Plaintiff to continue his employment at TTI.

31.     In continuing his employment at TTI as its Executive Vice President of Sales & Marketing and Chief Sales Officer after January 2014, Plaintiff reasonably relied upon each of the promises and/or offers made to him by Defendants described in Paragraph 29 above.

32. The failure of TGI and TTI, to date, to keep each of the promises and/or offers made to Plaintiff described in Paragraph 29, has caused a detriment to Plaintiff – namely, through deprivation of the ten percent equity stake in TGI, a company that is now up for sale – that can only be avoided by the enforcement of each promise and/or offer described in Paragraph 29 above.

### COUNT III – UNJUST ENRICHMENT
### (Against All Defendants)

33. Plaintiff restates and reincorporates by reference the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

34. In continuing his employment at TTI as its Executive Vice President of Sales & Marketing and Chief Sales Officer from January 2014 to October 2016, Plaintiff conferred a benefit upon each Defendant; specifically, Plaintiff's valuable services to TTI, which have benefitted each defendant, in maintaining and/or growing TTI's annual revenue since January 2014.

35. Defendants have had knowledge since January 2014 of the benefits conferred upon them by Plaintiff described in Paragraph 34 above.

36. Under the circumstances described above, it would be inequitable and unjust for Defendants to retain the benefits conferred upon them by Plaintiff described in Paragraph 34 without transfer of a ten percent equity in stake in TGI or payment of an equivalent value to Plaintiff by Defendants, in an amount to be proved at trial.

### PRAYER FOR RELIEF

Whereupon, Plaintiff prays:

    (a) that the Court exercise jurisdiction over this action;

  (b) that the Court award compensatory damages to Plaintiff in an amount to be determined at trial but not less than $50 million;

  (c) that the Court grant the equitable relief described above in Counts II and III;

  (d) that the Court award Plaintiff pre-judgment interest; and

  (e) such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby requests that this case be tried to a jury.

    Respectfully submitted,

    AEGIS LAW GROUP LLP

  By: /s/ Serine Consolino
    Serine Consolino
    Michael K. Ross (*pro hac vice* motion to be filed)
    801 Pennsylvania Avenue, N.W., Suite 740
    Washington, D.C. 20004
    Tel: (202) 737-3500
    Fax: (202) 735-5071
    sconsolino@aegislawgroup.com
    mross@aegislawgroup.com

    *Attorneys for Plaintiff*

Dated: July 20, 2017